# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **KEVIN LAMAR PITTS** | * | **CIVIL ACTION NO.  12-1010** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN, LOUISIANA STATE PENITENTIARY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Kevin Lamar Pitts filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on April 25, 2012.  [doc. # 1] and an amended petition on July 3, 2012 [doc. # 10].   Respondent responded to the petitions on August 8, 2012.  [doc. # 13].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction of and sentence for Simple Robbery and Possession of a Firearm by a Convicted Felon.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

## BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> In late 2006, two friends, Abercrombie and Broussard, along with Broussard's fiancee, Erica Pardue, went to Spurgeon Drive in Monroe to "get a little coke." According to the testimony of Broussard and Abercrombie, the three traveled in Broussard's truck and Broussard was driving. When they arrived at Spurgeon Drive, Abercrombie got out of Broussard's vehicle, but was not able to find his supplier. Noticing Defendant standing outside, Abercrombie approached Defendant and asked him if he could get some cocaine. Abercrombie testified that he gave Defendant $ 20 and was provided with a small amount of cocaine, Abut [*sic*] it wasn't straight."

1

Shortly thereafter, Defendant told Abercrombie that he owed Defendant money and took Abercrombie's cell phone without permission.  Abercrombie then returned to the truck where Broussard and Pardue were waiting. Pardue called Abercrombie's cell phone, which was answered by Defendant, and the two began to argue. Defendant then walked over to the truck and took Pardue's and Broussard's cell phones at gunpoint. At trial, Abercrombie and Broussard described the gun as a nickel-plated 9 mm pistol.

A few minutes later, Broussard went to a liquor store and attempted to write Defendant a check for $ 60, but the check was refused by the store clerk. Broussard convinced Defendant to allow him to take Pardue home. Abercrombie and Broussard took Pardue home and then returned to Defendant with an amplifier, which they hoped to give Defendant in exchange for the return of their cell phones. When Abercrombie and Broussard returned, Defendant rejected the amplifier that they tried to give him. Defendant then pulled out a gun, gave the gun to a young woman who was with him and told her to "shoot them" if they moved. Defendant then proceeded to remove Broussard's stereo, speakers and amplifier from his truck. According to Broussard, the value of the stolen stereo equipment was approximately $ 900.

After removing the stereo equipment, Defendant demanded the keys to Broussard's truck and then drove Broussard, Abercrombie and the young woman to a house where he dropped off the two men. On the way to the house, Defendant and Abercrombie smoked crack cocaine, but Broussard did not. Defendant left Abercrombie and Broussard at the house with an unarmed older female who sat with the two men for several hours until Defendant returned. Neither Broussard nor Abercrombie attempted to leave the house while Defendant was gone, later testifying that they stayed at the house because it seemed unsafe to leave in the middle of the night on foot in an unfamiliar neighborhood.

At approximately 4:00 a.m., Defendant returned to the house and drove Abercrombie and Broussard back to Spurgeon Drive where he gave Broussard a hug and thanked him "for the materials." Defendant returned the cell phones, but kept the stereo, speakers and amplifier that he had removed earlier from Broussard's truck. As Broussard and Abercrombie were heading home, they noticed Sergeant Phillip Zalewski of the Louisiana State Police patrolling LA-139 and they stopped and reported the incident.

Detective Tommy Rhodes of the Monroe Police Department testified that he received a phone call from Defendant the day after he was arrested. After Officer Rhodes advised Defendant of his Miranda rights, Defendant told him that he was the individual at Spurgeon Street, but denied having a gun and robbing the victims. According to Officer Rhodes,  Defendant admitted "to everything except for robbing them." Defendant told Officer Rhodes that he had provided Abercrombie and Broussard cocaine and a place to smoke the cocaine, that he had taken them to his aunt's house and that he was offered Broussard's stereo equipment and the use of his

> vehicle in exchange for helping Broussard and Abercrombie obtain cocaine.
>
> Abercrombie identified Defendant in a photographic lineup and both Abercrombie and Broussard identified Defendant at trial. Broussard incorrectly identified Defendant in a photographic lineup; however, he explained the error by stating that the picture of Defendant was outdated and not representative of Defendant's true appearance. Pardue's testimony was corroborative of Broussard's and Abercrombie's testimony and she also identified Defendant at trial.
>
> Deputy Sheriff Michael Swallow of the Ouachita Parish Sheriff's Office testified at trial after being qualified as an expert in fingerprint identification. His testimony was used to identify Defendant as the same individual who was previously convicted of simple robbery. Defendant and the State stipulated to this fact at trial.

*State v. Pitts*, 4 So.3d 955, 957-58 (La. App. 2 Cir. 2009)(Internal citations omitted).

On November 27, 2007, the jury returned a verdict of guilty of Simple Robbery, not guilty of Armed Robbery, and guilty of Possession of a Firearm by a Convicted Felon.  (R. 107-45). Thereafter, on December 5, 2007, the State filed a Habitual Offender Bill alleging that Petitioner has been convicted of five previous felonies, and therefore, Petitioner "should be sentenced as a sixth (6th) felony offender . . . [.]" (R. 162).  After a hearing on the State's Habitual Offender Bill, Petitioner was sentenced to twenty-five years of hard labor without benefit of parole on the charge of Possession of a Firearm by a Convicted Felon and life imprisonment on the Simple Robbery conviction. (R. 183-84).

Petitioner filed an appeal with the Second Circuit Court of Appeal where he presented a single assignment of error as to the sufficiency of the evidence to support his convictions.  (R. 198-99, 499-509).  On February 25, 2009, the appellate court denied Petitioner's claim, finding that  the alleged assignment of error was without merit.  *Pitts*, 4 So. 3d at 960.

Petitioner sought further review in the Louisiana Supreme Court.  *See State v. Pitts*, 25 So.3d 832 (La. 2010).  On January 29, 2010, his writ application was denied without comment. *Id.*  Thereafter, on January 10, 2011, Petitioner filed a Post Conviction Relief Application ("PCR").  (R. 565).  His PCR was denied on January 27, 2011.  (R. 614).  On March 15, 2011,

Petitioner appealed the denial of his PCR to the Second Circuit, which was denied on May 5, 2011.  (R. 647).   Finally, Petitioner filed an appeal to the Louisiana Supreme Court, which was denied on March 30, 2012.  (R.648, 689)

In this suit, Petitioner contends: (1) there is insufficient evidence to prove his guilt of Simple Robbery and Possession of a Firearm by a Convicted Felon beyond a reasonable doubt; (2) he was denied the right to confront and cross-examine Sandra Hampton in violation of the Sixth and Fourteenth amendments; (3) he was denied a right to a fair trial and due process when the trial court allowed the State to introduce his confession through the testimony of Detective Thomas Rhodes in violation of his Fifth, Sixth, and Fourteenth amendments; (4) he was deprived effective assistance of trial counsel in violation of the Sixth and Fourteenth amendments; and, (5) he was deprived effective assistant of appellate counsel in violation of the Sixth and Fourteenth amendments.  [doc. # 1-2, P. 19-20].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.        Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, —— U.S. ——, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.      Petitioner's Claims

### a.      Claim One: Insufficiency of the Evidence

For Petitioner's first claim, he argues that the evidence was insufficient to prove the elements of Simple Robbery and Possession of a Firearm by a Convicted Felon beyond a reasonable doubt.  In support of this claim, Petitioner argues that the Prosecution failed to established that he "use[d] force or intimidation" to take the aforementioned items.  [doc. # 1-2, P. 23].

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal *habeas* court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the

5

clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard.  *Pitts*, 4 So.3d at 958-59.  The court then referenced the definitions relevant to the crimes of Simple Robbery and Possession of a Firearm by a Convicted Felon under Louisiana law.  *Id.* at 959.  La. R.S. 14:65 defines Simple Robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."  La. Rev. Stat. Ann. § 14:65 (2012).  Additionally, La. R.S. 14:95.1 makes "[i]t is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) . . .  to possess a firearm or carry a concealed weapon." *Id.* at § 14:95.1.

Ultimately, the Louisiana appeals court, applying the *Jackson* standard, found that the "evidence against [Petitioner], when viewed in the light most favorable to the prosecution, establishes beyond a reasonable doubt the requisite elements of simple robbery and possession of a firearm by a convicted felon." *Pitts*, 4 So.3d at 960.  A review of the state court record shows that the state court's findings were entirely reasonable; *a fortiori*, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable; therefore, Petitioner's

6

claim for relief based on insufficiency of the evidence should be **DENIED.**

      **b.**      **Claim Two: Right to Confront and Cross-examine**

Next, Petitioner argues that he was "denied the right to confront and cross-examine Sandra Hampton," and therefore, the testimony of Detective Thomas Rhodes is testimonial hearsay in violation of the Confrontation Clause.  [doc. # 1-2, P. 24].  Specifically, Petitioner points to the portion of the Detective's testimony in which he testified that Sandra Hampton identified Petitioner, stating:

Q.      Okay, Now, any doubt in your mind the guy you were talking on that phone was Kevin Pitts?

A.      None.

Q.      You're familiar with his voice, right?

A.      I am.

Q.      You had also, had you not, identified him through his aunt, hadn't you?

A.      I had his aunt's, Sandra Hampton; I had called her.

Q.      She gave his identity as being the one that brought those two boys to her house, did she not?

\*                                     \*                                      \*

A.      Ms. Hampton provided that identity.

Q.      So, based upon what you had at the time, there was no need to get any DNA?

A.      There was none.

(R. 452-53).  Respondent retorts that this testimony is not hearsay, as it "was not offered to prove the fact that the Petitioner was the person who dropped the two victims off at his aunt's house on that evening, but to establish why Det. Rhodes did not feel the need to gather DNA or take fingerprints from the crime scene."  [doc. # 14, P. 5].

Evidentiary errors of state law are generally not cognizable in federal *habeas* review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Id*.  Thus, in order for Petitioner to obtain relief on his claim that the trial court testimony admitted inadmissible hearsay under Louisiana law, he would have to prove that the trial court's erroneous admission of this testimony was so prejudicial that it denied him the right to a fair proceeding.  Petitioner cannot make this showing because he cannot demonstrate that the admission of the Detective's testimony was erroneous under state law in the first place.

"Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  La. C.E. art. 801(c).  The Louisiana Supreme Court has repeatedly held that a Police Officer, in explaining his own actions, may refer to statements made by other persons involved in the case.  As set forth in *State v. Calloway*, the statements are "admitted not to prove the truth of the assertion . . . but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the arresting officers.  The testimony is therefore not hearsay." *State v. Edwards*, 406 So. 2d 1331, 1349 (La. 1981) (citing 324 So. 2d 801, 809 (La.1976)); s*ee also State v. Monk*, 315 So. 2d 727 (La. 1975); *State v. Bluain*, 315 So. 2d 749 (La. 1975); *State v. Carvin*, 308 So. 2d 757 (La. 1975).

In this case, the Detective's testimony regarding Ms. Hampton's identification was not being used to prove that Petitioner was the one who "brought those two boys to her house," but served to explain why the Detective did not investigate the case further.  As Respondent properly points out, Defense counsel, Charles Kincade "devoted most of his cross examination of Det.

Rhodes to question him about his lack of efforts to further develop a case against Petitioner."

[doc. # 14, P. 5].  Specifically, Defense counsel questioned the Detective about why he did not:

(1) recover the gun; (2) contact possible witnesses of the robbery; (3) collect any physical

evidence; (4) send Petitioner's truck for forensic analysis and take fingerprints off the steering

wheel; (5) collect fingerprints and perform fingerprint analysis off Abercrombie and Broussard

phones; and, (6) interview Ms. Pardue.  (R. 444-47).  The  Detective's testimony at issue here

occurred in the Prosecution's redirect examination and was being used to explain why the

Detective did not investigate further or, in the words of *Calloway* and progeny, "explain the

sequence of events leading to the arrest of the defendant from the viewpoint of the arresting

officers." *Calloway*, 324 So.2d at 809.  Ms. Hampton's out-of-court identification of Petitioner

was not being used for the truth of the matter asserted, and is therefore not hearsay.  The

Petitioner's confrontation right is only implicated when the out-of-court statement is used to

prove the truth of the matter asserted.  *Tennessee v. Street*, 471 U.S. 409, 414 (1985).

Accordingly, Petitioner's claim for relief on this basis should also be **DENIED**.

     **c.**     **Claim Three: Confession**

Petitioner alleges that his confession was improperly admitted by the trial court in

violation of his Fifth, Sixth, and Fourteenth amendment rights.  [doc. # 1-2, P. 23].  The record

reveals that Petitioner called Detective Rhodes on May 31, 2006, and after being apprised of his

*Miranda* rights, told the Detective he was at the scene of the crime, but denied committing a

crime, and finally that "he provided the cocaine and place to smoke the cocaine."  (R. 237-38).

The Fifth Amendment privilege against self-incrimination prohibits admitting statements

given by a suspect during custodial interrogation without a *Miranda* warning.  *Miranda v.*

*Arizona*, 384 U.S. 436, 444 (1966).  "A suspect is in custody for purposes of *Miranda* when he is

placed under formal arrest or when a reasonable person in the position of the suspect would

understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest." *United States v. Gonzalez*, 121 F.3d 928, 939 n.6 (5th Cir. 1997). Interrogation, for purposes of *Miranda*, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Thus, spontaneous statements initiated by the defendant and not made in response to questions posed by the police do not qualify as statements made during interrogation. *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990).

Assuming *arguendo* that Petitioner was in custody and being interrogated by the Detective during the May 31st telephone conversation, the undersigned finds that Petitioner had knowingly, voluntarily, and intelligently waived his *Miranda* rights. The waiver inquiry "has two distinct dimensions:" waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 427 (1986). The prosecution need not show that a waiver of Miranda rights was express. An "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence. *North Carolina v. Butler*, 441 U.S. 369, 376 (1979). *Butler* made clear that a waiver of *Miranda* rights may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." 441 U.S., at 373.

If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver" of Miranda rights. *Miranda*, 384 U.S. at 475. The prosecution must make the additional showing that the accused understood these rights. *Colorado v. Spring*, 479 U.S. 564, 573-575

10

(1987).  Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.  *Berghuis v. Thompkins*, ___U.S. ___, 130 S. Ct. 2250, 2262 (2010).  Finally, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.  *Id.* at 2262.

The record in this case shows that Petitioner waived his right to remain silent. There is no basis in the record to conclude that he did not understand his rights; and on these facts it follows that he chose not to invoke or rely on those rights when he did speak.  First, there is no contention that Petitioner did not understand his rights; and from this it follows that he knew what he gave up when he spoke.  The Detective read his rights on the telephone prior to the beginning his conversation with Petitioner, and Petitioner could understand English.  Second, since Petitioner initiated the telephone conversation with the Detective, there is no argument that Petitioner's statements were coerced.  Third, there is just no indication in the record that Petitioner wished to remain silent, if he had, he would not have called the Detective to begin with, or he could have unambiguously invoked his *Miranda* rights and ended the telephone conversation.  Accordingly, Petitioner's Fifth amendment claim lacks merit.

Finally, the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. XVI.  In *Michigan v. Jackson*, the Court held that once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. 475 U.S. 625, (1986).  It is undisputed, and the undersigned accepts for purposes of the present case, that at the time Petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the aforementioned crimes

that had been formally charged.

It is clear, of course, that the Sixth Amendment right to counsel prohibits the government from deliberately eliciting incriminating evidence from an accused "after he has been indicted and in the absence of counsel." *United States v. Kidd*, 12 F.3d 30, 32 (4th Cir. 1993) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)).  A Sixth Amendment violation is not established merely by showing that a government agent obtained incriminating information while acting as a "listening post;" rather, the Petitioner must also show that the informant "took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986).  Thus, the Supreme Court held in *Kuhlmann* that the admission of a defendant's "spontaneous" and "unsolicited" statements when the government agent "at no time asked any questions" did not violate the defendant's Sixth Amendment right to counsel.  *Id.* at 440.  This is the case here, as Petitioner made the unsolicited call and subsequent admissions to the Detective. The Detective in no way solicited Petitioner's statements. Therefore, Petitioner's Sixth amendment claim lacks merit.

Accordingly, Petitioner's claim for relief on these grounds should also be **DENIED**.

### d.      Claim Four: Ineffective Assistance of Trial Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.

12

*Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Petitioner contends that he was deprived effective assistance of trial counsel because counsel: (1) "[f]ailed to object to the state's introduction of other crimes evidence and move the

13

court for a *Prieur* Hearing;" (2) "[f]ailed to raise double jeopardy as a defense to his multiplicitous bill of information;" (3) "[f]ailed to object to inadmissible hearsay, because Pitts had a right to confront his accuser, Vicky Mooney, who allegedly took his fingerprints on an unrelated arrest that was later used by Deputy Michael Swallow in the middle of trial to show the jury that Mr. Pitts was convicted of robbery in the past;" (4) "allowed Mr. Pitts to be multiple billed and given a life sentence on felony theft when Pitts has never been convicted of felony theft;" (5) "[f]ailed to protect Pitts' right to due process at the habitual offender hearing when he did not allow his client to state whether the allegation in the Habitual Offender Bill of Information was true;" and, (6) "[f]ailed to object and move for a mistrial when the trial court's instruction to the jury deviated from what constitute [*sic*] possession of a firearm by informing the jury that Mr. Pitts was a convicted felon." [doc. # 1-2, P. 37-38].   Petitioner's claims will be addressed in turn.

### i.   Failure to object to introduction of other crimes evidence.

Under Louisiana law, evidence pertaining to a defendant's commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove the defendant's character and thus his subsequent disposition to break the law.  La. C.E. art. 404; *State v. Harrison*, 604 So. 2d 583 (La. 1992). The underlying rationale is that the finder of fact is likely to convict because the defendant is a "bad person" regardless of the strength of evidence against him in the case being tried.  *State v. Gay*, 616 So. 2d 1290 (La. App. 2d Cir. 1993).

However, there are some exceptions to this general rule listed in La. C.E. art. 404, which provides, in pertinent part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

La. C.E. Art. 404.  There are other jurisprudential factors to be considered in determining whether evidence of other acts may be admitted.  First, one of the exceptions listed in Article 404 must have some independent relevance, or be an element of the crime charged; in addition, such factor must be a genuinely contested issue at trial.  *State v. Welch*, 615 So. 2d 300 (La. 1993); *State v. Jackson*, 625 So. 2d 146 (La. 1993).  Second, the Prosecution must make a showing of fact which would support a jury finding that the defendant committed the prior act by a preponderance of the evidence.  La. C.E. art. 1104; *State v. Langley*, 680 So. 2d 717 (La. App. 4th Cir. 1996); *State v. Crawford*, 672 So. 2d 197 (La. App. 3d Cir. 1996).  Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

Lastly, the requirements set out in *State v. Prieur*, 277 So. 2d 126 (La. 1973) must be met. Under *Prieur*, in order to comply with due process, the Prosecution is required to: (1) give pretrial notice of its intent to use evidence of other crimes and (2) prior to admission of the evidence, show that the evidence is not repetitive or cumulative, serves the purpose for which it is offered, and is not pretext for portrayal of the defendant as a person of bad character.  *Prieur*, 277 So.2d at 135.  Additionally, *Prieur* requires that, upon request of the defendant, the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.  *Id.*

15

In this case, it is uncontested that the Prosecution complied with the pretrial notice requirement by providing Petitioner with notice of its intent to introduce evidence that Kevin Lamar Pitts was the same person convicted of Simple Robbery.   However, Petitioner argues that defense counsel failed to "move the court for a *Prieur* hearing." [doc. # 1-2, P. 38].

Assuming *arguendo* that defense counsel acted outside of the wide range of reasonable competence by not moving the court for a *Prieur* hearing, the Petitioner is still unable to establish actual prejudice under prong-two of the *Strickland* test.  The Prosecution's introduction of the prior Simple Robbery conviction falls squarely within an exception of Article 40; specifically, it is an element of the Possession of a Firearm by a Convicted Felon charge.  As stated *supra*, to be found guilty of  Possession of a Firearm by a Convicted Felon, the prosecution must establish that a "person who has been convicted of a crime of violence as defined in R.S. 14:2(B) . . . possess[ed] a firearm or carr[ied] a concealed weapon."  La. Rev. Stat. Ann. § 14:95.1 (2012). Under La. R.S. 14:2(B), Simple Robbery is included as one of the enumerated "crimes of violence."  La. Rev. Stat. Ann. § 14:2(B)(23) (2012).  Therefore, Petitioner's first claim lacks merit, both because he has failed to show that his attorney's actions fell outside the wide range of professionally competent assistance and because he is unable to show actual prejudice.

> **ii.      Failure to raise double jeopardy as a defense.**

Petitioner argues that the amended bill of information that charged him with two counts of Armed Robbery with use of a firearm and Possession of a Firearm by a Convicted Felon violated his rights under the Double Jeopardy Clause. [doc. # 1-2, P. 42].

The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Austin v. Cain*, No. 10-30342, 2011 WL 4906108, at *6 (5th Cir. 2011) (citations

16

omitted).  In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court established

the test for determining whether two statutes constitute the "same offense" for double jeopardy

purposes.  The Court found that "where the same act or transaction constitutes a violation of two

distinct statutory provisions, the test to be applied to determine whether there are two offenses or

only one, is whether each provision requires proof of a fact which the other does not."

*Blockburger*, 284 U.S. at 304.

In applying the *Blockburger* test, the Louisiana state court found that Petitioner's charges

were for two separate offenses. (R. 611).  The court found that:

> armed robbery with the use of a firearm is proven by establishing beyond a
> reasonable doubt the following elements as enumerated in L.S.A. – R.S. 14:64 and
> 14:64.3: 1) the taking of anything of value; 2) the thing of value belongs to another
> or is in immediate control of another; 3) the use of force or intimidation in the
> perpetration of the crime; 4) the perpetrator is armed with a dangerous weapon; and
> 5) the dangerous weapon is a firearm.  Using the same "*Blockburger*" test, possession
> of a firearm by a person convicted of certain felonies is proven by establishing
> beyond a reasonable doubt the following elements under L.S.A. – R.S. 14:95.1: 1)
> a prior conviction of a crime of violence as defined in R.S. 14.2(B) which is a felony
> (in this case, simple robbery); and 2) possession of a firearm of carrying a concealed
> weapon.  The latter crime clearly requires proof of elements that form the basis of the
> crime that are separate and distinct from the former.

*Id.*  The undersigned finds that the state court's application of *Blockburger* is objectively

reasonable.  Therefore, Petitioner's second claim lacks merit.

To the extent that Petitioner seeks to incorporate both an "outrageous government

conduct defense" and a prosecutorial misconduct claim into his double jeopardy argument, the

undersigned finds these additional claims fail along with his double jeopardy claim.

### iii.     Failure to object to hearsay statement by Deputy Michael Soileau

Petitioner argues "that Deputy Swallow should not have been allowed to testify to a

certified document prepared by Deputy Mooney" because the Deputy's testimony is testimonial

hearsay in violation of the Confrontation Clause.  [doc. # 1-2, P. 51].   Specifically, Petitioner's

fingerprints were contained on a Bill of Information for a prior Simple Robbery conviction, and Deputy Vicky Mooney certified that they were his fingerprints in accordance with the statute. Deputy Mike Swallow testified that he examined the fingerprints on the Bill of Information and compared it to Petitioner's current arrest fingerprints taken when he was booked on May 30, 2006, into Ouachita Correctional Center.  (R. 458-59).  After comparing the two sets of finger prints, Deputy Swallow testified that they were identical.  (R. 459).  Thereafter, the record reveals that the parties stipulated and the trial court accepted that Petitioner was "convict[ed] of simple robbery which [he] was sentenced to serve an imprisonment of seven (7) years at hard labor with credit for time served."  (R. 460).

Petitioner relies on the Supreme Court's holding in *Melendez-Diaz* for the proposition that "before the results of a scientific test may be introduced into evidence, the defendant has the right to confront the analyst."  [doc. # 1-2, P. 53] (citing *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 332 (2009)).  However, the *Melendez-Diaz* decision was not decided until two years after Petitioner was convicted.   The Supreme Court held, in *Cullen v. Pinholster*, that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. ___ U.S. ___, 132 S. Ct. 1388 (2011).  The Court stated that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.* at 1398.  As the Court explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions "against this Court's precedents as of 'the time the state court renders its decision.'" *Id.* at 1399  (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).  Therefore, the undersigned must focus on the record and the Court's precedent as they existed during the Petitioner's conviction in 2007. Ultimately, this necessarily forecloses Petitioner from relying on the *Melendez-Diaz* decision, as it was not decided until 2009.

However, even if *Melendez-Diaz* were to apply retroactively, the undersigned finds that Deputy Mooney's certification is non-testimonial hearsay. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, the Court held that right is violated where the prosecution introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004). The Court observed, however, that certain statements, "by their nature [are] not testimonial – for example, business records or statements in furtherance of a conspiracy." *Id.* at 56.

The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" so the circuits necessarily developed their own interpretation of what is a "testimonial statement" for Sixth Amendment purposes. *Id.* at 68. The decision in *Melendez-Diaz*, however, calls those cases into doubt. There the Court addressed the question of whether the introduction of a forensic analyst's laboratory report, prepared for use in a criminal prosecution to prove that bags seized by police and connected with the defendant contained cocaine, violated the Sixth Amendment. *Melendez-Diaz*, 557 U.S. at 307. The prosecution placed the bags into evidence with three "certificates of analysis" that reported the weight of the bags and stated that they were found to contain cocaine. *Id.* at 308-09. The defendant objected to the certificates, arguing that Crawford required the analysts to testify in person. *Id.* at 309.

The Court characterized the certificates as falling "within the 'core class of testimonial statements' [described in Crawford]." *Id.* at 311. The Court reasoned that the certificates were sworn declarations of fact made for the purpose of establishing or proving some fact--namely, that the substance found was cocaine. *Id.* The affidavits thus were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be

available for use at a later trial." *Id.* (quoting *Crawford*, 541 U.S. at 52).  Furthermore, the

holding in *Melendez-Diaz* relies on a key distinction between records that are kept in the ordinary

course of business and those that are specifically produced for use at trial: the latter are

"testimonial" and are at the heart of statements triggering the Confrontation Clause.  *United*

*States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010).  Also important to the rationale in

*Melendez-Diaz*, is the fact that the affidavits in question were used to establish a necessary fact to

convict: that the bags contained cocaine.  *Id.*

      In this case, the certification by Deputy Mooney was not "made under circumstances

which would lead an objective witness reasonably to believe that the statement would be

available for use" 10 years later in Petitioner's 2007 trial on a different offense.  As the record

reveals, the fingerprints and the certification appear on a Bill of Information produced in the

ordinary course of police business.   Specifically, as Deputy Swallow testified, "it is customary

practice to obtain [inmate] fingerprints before they [are] put into process . . . [a]nd those records

are kept by the Sheriff's Office and maintained as part of the official record of that office."  (R.

458).  Therefore, the present case is distinguishable from *Melendez-Diaz*, as there the analysis of

the bags of cocaine and the certifications were specifically made for use during prosecution.

Accordingly, the undersigned holds that Deputy Mooney's testimony is non-testimonial.

      Finally, even if  Deputy Mooney's certification on the bill of information were

testimonial hearsay, the Petitioner fails to argue and is unable to establish actual prejudice.  In

fact, Petitioner fails even to argue that he was not the defendant convicted of Simple Robbery in

1997.  While Deputy Swallow's testimony was used by the Prosecution to establish that the

Petitioner was the same person convicted of the prior Simple Robbery, his testimony with regard

to the fingerprints was cumulative, as there was other evidence at trial that was ample to prove

that Petitioner was convicted of Simple Robbery in 1997.  Specifically, the Prosecution entered

both the Bill of Information and the Judgment of Conviction for Simple Robbery into evidence. (R. 459-60). These exhibits contain other information that  identifies Petitioner, including, but not limited to, his: (1) name; (2) date of birth; and, (3) social security number.  In addition, the parties stipulated and the trial court accepted "in Number 95F0689H, titled *State of Louisiana versus Kenvin Lamar Pitts*, that a judgment was rendered by this Court; signed on May 15, 1997, for the conviction of simple robbery [, for] which the Defendant was sentenced to serve an imprisonment of seven (7) years at hard labor with credit for time served."  (R. 460).  For all of these reasons, the undersigned finds that Petitioner's claim of ineffective assistance of trial counsel lacks merit.

### iv.   Failure to object to Habitual Offender Bill of Information on the basis that the State used felony theft as a predicate offense.

Petitioner argues that he was denied effective assistance of counsel because counsel failed to object to the Habitual Offender Bill of Information that mistakenly contained a felony theft conviction.  [doc. # 1-2, P. 54].  Petitioner argues that he was never convicted of felony theft, and therefore, "the state erroneously used the charge of felony theft in its bill of information to enhance [Petitioner's] sentence."  *Id.*

 Although Respondents have failed to respond to this particular claim, the Court notes that Petitioner is unable to establish that counsel's failure to object caused him any actual prejudice.  The Prosecution's mistake is clearly an oversight and a harmless error, as an objection by defense counsel would not have resulted in Petitioner's receiving a lesser sentence.  The record reveals that the State established that Petitioner had previous convictions for possession of cocaine with the intent to distribute, conspiracy to distribute cocaine, theft of a firearm, simple escape, and simple robbery.  (R. 166).  These convictions support Petitioner's sentence as a habitual offender and the resulting enhanced sentence by the trial court.  Accordingly, Petitioner

was not prejudiced by his counsel's failure to object, and therefore, the undersigned finds that this claim also lacks merit.

          v.        **Failure to allow Petitioner to state whether allegations in the Habitual Offender Bill of Information were true.**

Petitioner next argues that defense counsel failed to allow him to "state whether the allegations in the Habitual Offender Bill of Information were true," thereby "failing to protect [Petitioner's] right to due process at the habitual offender hearing.  [doc. # 1-2, P. 57]. Furthermore, Petitioner argues that defense counsel's "over-all performance was deficient regarding [Petitioner's] habitual offender proceedings where he did not have the trial court comply with the procedure set-forth by LSA-R.S. 15:529.1D(1)(a)." *Id.*

Under LSA-R.S. 15:529.1D(1)(a), "the court . . . shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true."  La. Rev. Stat. Ann. § 15:529(D)(1)(a). In this case, defense counsel entered in "general denials" of the allegations in the Habitual Offender Bill of Information on behalf of Petitioner.  (R. 178).  Therefore, Petitioner's due process rights were protected at the hearing.  This claim is without merit.

          vi.       **Failure to move for a mistrial when the trial court's instruction to the jury deviated from what constitutes Possession of a Firearm by a Convicted felon.**

Petitioner argues that defense counsel failed to object and move the court for a mistrial when the court allegedly deviated from the proper definition of the elements of Possession of a Firearm by a Convicted Felon in its instruction to the jury. [doc. # 1-2, P. 60-61].  Specifically, he argues that the trial court informed the jury that he had been previously convicted of the crime of Simple Robbery as a matter of fact.  *Id.*  Petitioner cites the following language in support of

his argument:

> I've received another request and I certainly understand that. The request is can we have the law reread again and it's my take that, based on the follow-up, it says we want to know what constitutes possession of a firearm. You don't want all of the instructions reread but you want to know the definition of possession of a firearm. Okay, and I'll give you that.  The **Defendant is alleged to have possessed a firearm on or about April the 28th, 2006 after having been convicted of a violation of simple robbery**, which is a felony, on or about May the 27th, 1997.  It is unlawful for any person to possess a firearm after having been convicted of any felony grade crime of violence.  Simple robbery is defined by state law as a crime of violence.  The prohibition against possession of a firearm by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten (10) years from the date of completion of sentence, probation, parole, or suspension of sentence.

*Id.* (citing (R. 465-66)).   Thereafter, defense counsel objected to the court's instruction, which was noted for the record.  (R. 467).

The undersigned finds that defense counsel was not ineffective in failing to move for a mistrial.  The court clearly prefaced its instruction of the prior conviction for Simple Robbery with the word "alleged."  This instruction did not encroach on the jury's ability to "use their own rationale," as Petitioner alleges.  Therefore, the undersigned finds this claim lacks merit.

Accordingly, the undersigned finds that all of Petitioner's claims of ineffective assistance of trial counsel lack merit, and therefore, Petitioner's claim for relief on this grounds should also be **DENIED**.

e.     **Claim Five: Ineffective Assistance of Appellate Counsel**

In Petitioner's final claim, he argues deprivation of effective assistance of appellate counsel for failing to raise the above six and one additional ineffective assistance of trial counsel claims on appeal. [doc. # 1-2, P. 62-63].

 A criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal as of right, the *Strickland* standard applies to claims of ineffective assistance of counsel by both trial and appellate counsel. *See Lombard v. Lynaugh*, 868 F.2d 1475, 1479 (5th

Cir. 1989); *see also Strickland*, 466 U.S. at 687; *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993).  However, the courts have declined "to review claims of ineffective assistance of counsel on direct appeal."  *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  The Supreme Court recently has emphasized that a *habeas* motion is the preferred method for raising a claim of ineffective assistance of counsel.  *Massaro v. United States*, 538 U.S. 500 (2003).  The Court noted that "when an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."  *Id.* at 1694.

In this case, Petitioner properly brought his ineffective assistance of trial counsel claims in his PCR motion and presently in his *habeas* petition.  Both the state courts and this Court have addressed the merits of each one of his claims, and therefore, Petitioner is unable to argue that his appellate counsel's failure to bring those claims caused him actual prejudice on appeal.  Therefore, Petitioner's claim for relief on this grounds should also be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Kevin Lamar Pitts [docs. # 1, 10] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

24

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of October, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE